UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

TREVOR TERRY,

                         Petitioner,

      -against-

JOHN FOWLE, as Director of Nassau County
Department of Probation, and ERIC SCHNEIDERMAN,
as Attorney General of the State of New York,

                         Respondent.

---------------------------------------------------------------------X

**15-cv-5800**

# MEMORANDUM OF LAW
# IN SUPPORT OF
# 28 U.S.C. § 2254 PETITION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................i

MEMORANDUM OF LAW ................................................................................................ 1

INTRODUCTION ............................................................................................................... 2

PROCEDURAL HISTORY.................................................................................................. 2

    I.    State Trial Court Proceedings ................................................................. 2

    II.   State Appellate Proceedings ................................................................... 3

STATEMENT OF FACTS ................................................................................................... 3

ARGUMENT ....................................................................................................................... 8

    PETITIONER'S FEDERAL DUE PROCESS RIGHTS WERE
    VIOLATED WHEN HE ENTERED A GUILTY PLEA WHICH
    WAS NOT INTELLIGENTLY OFFERED BECAUSE HE WAS
    DEPRIVED OF NOTICE REGARDING AN ESSENTIAL
    ELEMENT OF THE OFFENSE............................................................... 8

    I.    General Procedural Issues ....................................................................... 8

        A.  Exhaustion of Remedies .................................................................. 8

        B.  Timeliness of Application ................................................................. 9

        C.  Standard of Review........................................................................... 9

    II.   Discussion of Ineffective Assistance Claim ....................................... 12

        A.  Governing Law ............................................................................... 13

        B.  Application of Law to the Facts................................................... 15

        C.  The Adequate and Independent State Grounds Procedural Bar
            Does Not Apply ............................................................................. 22

        D.  The New York Court's Unreasonable Application of Clearly
            Established Supreme Court Precedent ........................................ 27

CONCLUSION................................................................................................................... 29

## TABLE OF AUTHORITIES

UNITED STATES SUPREME COURT

Baldwin v. Reese, 541 U.S. 27 (2004) ................................................................... 8

Bousley v. United States, 523 U.S. 614 (1998) ....................................... 14, 18, 26, 28

Bradshaw v. Stumpf, 545 U.S. 175 (2005) ........................................................ 14, 15

Brady v. United States, 397 U.S. 742 (1970) ..................................................... 13, 27

Coleman v. Thompson, 501 U.S. 722 (1991). ......................................................... 23

Harrington v. Richter, 562 U.S. 86 (2011) ............................................................. 27

Henderson v. Morgan, 426 U.S. 637 (1976) .............................................. 13, 18, 27

House v. Bell, 547 U.S. 518 (2006) ........................................................................ 26

Lee v. Kemna, 534 U.S. 362 (2002) ....................................................................... 23

O'Sullivan v. Boerckel, 526 U.S. 838 (1999) ........................................................ 8, 9

Ramdass v. Angelone, 530 U.S. 156 (2000) ...................................................... 10, 12

Reed v. Ross, 468 U.S. 1 (1984) ............................................................................. 26

Sawyer v. Whitley, 505 U.S. 333 (1992) ................................................................. 26

Weeks v. Angelone, 528 U.S. 225 (2000) ............................................................... 12

Williams (Terry) v. Taylor, 529 U.S. 362 (2000) ............................................... 10, 11

Wiggins v. Smith, 539 U.S. 510 (2003) .............................................................. 11, 12


UNITED STATES COURTS OF APPEAL

Bates v. Bell, 402 F.3d 635 (6th Cir. 2005) ............................................................ 12

Cotto v. Herbert, 331 F.3d 217 (2d Cir. 2003) ........................................... 23, 24, 25

Francis S. v. Stone, 221 F.3d 100 (2d Cir. 2000) ................................................... 11

Garcia v. Lewis, 188 F.3d 71 (2d Cir. 1999) .......................................................... 23

Fulton v. Graham, 2015 U.S. App. LEXIS 16153 (2d Cir. 2015) .............................................. 25

Hanson v. Phillips, 442 F.3d 789 (2d Cir. 2006) ......................................................... 20

Hicks v. Franklin, 546 F.3d 1279 (10th Cir. 2008)................................................. 18, 19

Kennaugh v. Miller, 289 F.3d 36 (2d Cir.2002) ........................................................ 11

Kruelski v. Connecticut Super. Ct., 316 F.3d 103 (2d Cir. 2003) .............................. 12

Maltsev v. Albany County Probation Department, 303 Fed. Appx. 973 (2d Cir. 2008)...... 18, 19

Mollett v. Mullin, 348 F.3d 902 (10th Cir. 2003)....................................................... 12

Monroe v. Kuhlman, 433 F.3d 236 (2d Cir. 2006) ..................................................... 25

Morgan v. Bennett, 204 F.3d 360 (2d Cir. 2000) ......................................................... 8

Rosario v. Ercole, 601 F.3d 118 (2d Cir. 2010)......................................................... 11

Stark v. Hickman, 455 F.3d 1070 (9th Cir. 2006) ...................................................... 12

United States v. Bradley, 381 F.3d 641 (7th Cir. 2004) ......................................... 18, 20

United States v. Garth, 188 F.3d 99 (3d Cir. 1999) ................................................... 18

United States v. Ochoa-Gonzalez, 598 F.3d 1033 (8th Cir. 2010) ........................... 20

Waucaush v. United States, 380 F.3d 251 (6th Cir. 2004) ............................. 18, 19, 27

Williams v. Artuz, 237 F.3d 147 (2d Cir. 2001)........................................................... 9


UNITED STATES DISTRICT COURTS

Anaya v. Brown, 2006 U.S. Dist. LEXIS 62186 (S.D.N.Y. 2006)............................... 24

Babi v. Laclair, 2009 U.S. Dist. LEXIS 43464 (S.D.N.Y. 2009) ............................... 23

Garcia v. Boucaud, 2011 U.S. Dist. LEXIS 50416 (S.D.N.Y. 2011) ......................... 24

Hunter v. McLaughlin, 2008 U.S. Dist. LEXIS 12845 (S.D.N.Y. 2008) .................... 24


NEW YORK CASES

People v. Kent, 19 N.Y.3d 290 (2012) ...............................................................passim

People v. Lopez, 71 N.Y.2d 662 (1988) ........................................................ 3, 22, 25

People v. Peque, 22 N.Y.3d 168 (2013) .............................................................. 25

People v. Terry, 115 A.D.3d 683 (2d Dept. 2014) ......................................... passim

People v. Terry, 23 N.Y.3d 1043 (2014) ................................................................ 3

People v. Tyrell, 22 N.Y.3d 359 (2013) ............................................................... 22

People v. Worden, 22 N.Y.3d 982 (2013) ........................................................ 24, 25

STATUTORY PROVISIONS

28 U.S.C. §2244 ...................................................................................................... 9

28 U.S.C. §2254 ............................................................................................... passim

N.Y. Penal Law §263.16 .................................................................................. passim

N.Y. Criminal Procedure Law §470.05 ............................................................... 22

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

TREVOR TERRY,

                              Petitioner,

          -against-

JOHN FOWLE, as Director of Nassau County
Department of Probation, and ERIC SCHNEIDERMAN,
as Attorney General of the State of New York,

                              Respondent.

-------------------------------------------------------------------X


<u>MEMORANDUM OF LAW IN SUPPORT OF</u>
<u>28 U.S.C. § 2254 PETITION</u>

          The petitioner, Trevor Terry, submits this Memorandum of Law in support of his petition,

pursuant to 28 U.S.C. §2254, for a writ of habeas corpus to set aside his County Court, Nassau

County, conviction for possessing a sexual performance by a child (N.Y. Penal Law §263.16).

Petitioner is currently serving a probationary sentence pursuant to a judgment of conviction

rendered June 13, 2012, sentencing him to four months' imprisonment and ten years of

supervision by the Probation Department.  On March 5, 2014, his conviction was affirmed by the

New York Supreme Court, Appellate Division, Second Department.  On July 24, 2014, the New

York Court of Appeals denied him leave to appeal.

          Petitioner claims, as he did in the New York State courts, that his constitutional right to

due process was violated when he was deprived of adequate notice of the essential elements of

the offense upon which he was convicted.

1

## INTRODUCTION

Petitioner has been deprived of due process because at the time he pleaded guilty to "Possessing a Sexual Performance by a Child" under New York Penal Law section 263.16, he believed it was essentially a strict liability offense.  However, between the dates of petitioner's plea and his sentence, the New York Court of Appeals recognized an essential element of that offense to require that a defendant affirmatively act to save, download, print, or otherwise obtain the illicit material.  Since petitioner was never told by the court or defense counsel that this was an element of the crime to which he was pleading guilty, he did not enter the plea intelligently. The resulting conviction, petitioner's first and only such encounter with the criminal justice system, was obtained in violation of due process.

## PROCEDURAL HISTORY

I.      State Trial Court Proceedings

On March 16, 2012, petitioner pleaded guilty to possessing a sexual performance by a child in violation of section 263.16 of the New York Penal Law. (A[1]5-16).

On June 13, 2012, the court sentenced petitioner to four months' imprisonment and ten years of probation.  (A17-21).

II.     State Appellate Proceedings

Petitioner appealed to the Appellate Division of the New York Supreme Court, Second Department, arguing that his appellate waiver was invalid and unenforceable, that the conviction was invalid because the People failed to establish that petitioner engaged in an affirmative act to show that he exercised dominion and control over what was on his computer screen, and that his

---

[1] Numbers in parentheses preceded by "A" refer to pages of Petitioner's Appendix.

plea was not intelligently entered because he did not know this to be a necessary element of the offense.[2]

On March 5, 2014, the Appellate Division affirmed petitioner's convictions.  <u>People v. Terry</u>, 115 A.D.3d 683 (2d Dept. 2014).[3]  The Appellate Division found petitioner's "purported waiver of his right to appeal" invalid but then found his "challenge to the factual sufficiency of his plea allocution" to be "unpreserved for appellate review since the defendant failed to move to withdraw his plea."  <u>Id</u>. at 684 (internal quotations and citations omitted).  The court found that the "exception to the preservation requirement" articulated by the New York Court of Appeals in <u>People v. Lopez</u>, 71 N.Y.2d 662 (1988), did not apply because petitioner's allocution "did not clearly cast significant doubt on his guilt, negate an essential element of the crime, or call into question the voluntariness of the plea."  <u>Id</u>.  Lastly, the Appellate Division held that "[i]n any event, the facts admitted by the defendant during his plea allocution were sufficient to support his plea of guilty."  <u>Id</u>.

Petitioner sought leave to appeal to the New York Court of Appeals on all issues raised in his Appellate Division brief.  (A63).

On July 24, 2014, the New York Court of Appeals denied petitioner's application for permission to appeal.  <u>People v. Terry</u>, 23 N.Y.3d 1043 (2014); (A67).

## <u>STATEMENT OF FACTS</u>

On March 16, 2012, petitioner appeared before Hon. William J. O'Brien in the Nassau County Court.  (A5).  The court clerk advised petitioner that he had the right to a felony hearing on the charges presented in the complaint and the right to be prosecuted by indictment.

---

[2] All of the submissions to the Appellate Division, Second Department are reprinted in the Appendix at A22-61.
[3] The decision issued by the Appellate Division, Second Department, is reprinted in the Appendix at A62.

Petitioner waived both rights and signed the waiver of indictment.  (A6-7).  The clerk announced

that the Nassau District Attorney had filed a Superior Court Information charging petitioner with

one count of possessing a sexual performance by a child and advised petitioner that he was

entitled to have representation throughout the proceedings.  (A7).  Petitioner pleaded not guilty.

(A7).

The prosecutor then stated that the People would permit petitioner to plead guilty to one

count of violating Penal Law section 263.16, possessing a sexual performance by a child, in full

satisfaction of the instrument and the underlying charges if he agreed to a sentence of four

months' incarceration and ten years of probation.  (A7-8).  The plea was also contingent on

petitioner waiving his right to appeal the plea and sentence.  (A8).  Finally, the prosecutor stated

that the People had made no threats or promises in relation to the plea.  (A8).  Defense counsel

joined in the prosecutor's application.  (A8).

The court summarized the offer for petitioner and asked if he agreed to accept it.  (A8-9).

Petitioner responded that he did, and the court began asking him questions leading up to the

allocution.  (A9).  Petitioner answered that he was twenty-two years old, an American citizen,

that he could read and write English, and that he had completed high school and was a college

student.  (A9-10).  He responded to the court's questions that he was in good physical and mental

health, had never been treated or confined to a hospital for mental illness or disorder, and that he

had not in the past 24 hours ingested any alcohol, drugs, or medication which might affect his

ability to understand the proceedings.  (A10).

Petitioner indicated that he had spoken with his attorney, Glenn Hardy, regarding his

decision to plead guilty and that he was satisfied with Hardy's representation.  (A10).  The court

then referenced some of the trial rights which petitioner would be forfeiting by virtue of his

guilty plea and asked if he understood those rights.  Petitioner answered "yes."  (A11).  The court

then asked the prosecutor if the plea was conditioned on a waiver of petitioner's right to appeal

and he responded in the affirmative.  (A11).  The court went on

> An appeal is a proceeding in a higher court at which that court would have the opportunity to review what we've done here to see if we've made any mistakes of the law or fact that might affect either the validity of the conviction, which will happen shortly, or the validity of the sentence, which will be imposed at a later date.
>
> When you give up your right to appeal as part of a plea agreement, what that means is no higher court is going to have the opportunity to review what we've done here. Do you understand that is a consequence of your plea?

(A11-12).  Petitioner answered "yes."  The court asked if anyone had threatened or forced him to

plead guilty and petitioner responded "no."  (A12).  Petitioner indicated he was not on probation

or parole and had never been previously convicted of a felony.  (A12).

Next, the court informed petitioner that he was pleading to a class E felony, the

maximum punishment for which is four years of incarceration, and that petitioner would be

sentenced instead to 10 years of probation.  If petitioner were to be convicted of another felony

during that ten years, the court would "be required to impose a mandatory term of imprisonment

because of this conviction."  (A12-13).  Petitioner confirmed his understanding of this sentence.

(A13).  The court then explained the process which would follow entry of the plea, including the

creation of a presentence investigation report by the Probation Department, and the court

indicated that if the report suggested imposition of a different sentence, petitioner would be

entitled to withdraw his plea and reinstate his not guilty plea.  (A13).  The court warned

petitioner that the agreement was contingent on his cooperation with probation, his reappearance

at sentence, and his failure to get arrested for new charges before the sentencing date.  (A13-14).

If any of these conditions were violated, the court would not be bound by the sentencing promise

and petitioner could face the maximum sentence for the class E felony.  (A14).  Petitioner

responded that he understood.  (A14).

> THE COURT: Mr. Terry, by your plea of guilty in this case, sir, do you admit that on April 21, 2011, in the County of Nassau, being aware of the fact that these things were on your computer, that you were in possession of child pornography, that being an image of a female child five years of age exposing her genitals in a lewd fashion?
>
> THE DEFENDANT: Yes.
>
> THE COURT: People satisfied?
>
> MR. GLICKSMAN: Yes, we are, your Honor.
>
> THE COURT: The Court is satisfied as well. The Court is satisfied that the defendant understands the nature and the consequence of his plea. The Court is satisfied that the defendant has discussed the waiver of his rights with his attorney and finds that it is in the interests of justice to accept the plea from the defendant.
>
> THE CLERK: Okay, sir. Is it now your intention to plead guilty to one count of 263.16, possession of a sexual performance by a child in satisfaction of SCI 465N of 2012?
>
> THE DEFENDANT: Yes.
>
> THE COURT: The guilty plea is accepted.

(A14-15).  The matter was then adjourned for sentencing.

The sentencing hearing was held on June 13, 2012.   Defense counsel, Glenn

Hardy, indicated that he had explained the probation paperwork to petitioner and

petitioner had attended a program after the plea hearing and was "doing very well in that

program."  (A18).  The prosecutor reiterated the terms of the original offer: four months'

incarceration, ten years of probation, and destruction of the computer seized during the

search of petitioner's residence.  (A18-19).  The court asked if petitioner wished to make

a statement, and he responded "No. I'm sorry for everything. I apologize to the Court for

my actions."  (A19).

The court then imposed the promised sentence, along with various surcharges, fees, and fines.  (A19-20).

**ARGUMENT**

PETITIONER'S FEDERAL DUE PROCESS RIGHTS WERE
VIOLATED WHEN HE ENTERED A GUILTY PLEA WHICH
WAS NOT INTELLIGENTLY OFFERED BECAUSE HE WAS
DEPRIVED OF NOTICE REGARDING AN ESSENTIAL
ELEMENT OF THE OFFENSE.

I.    General Procedural Issues

   A.    Exhaustion of Remedies

Before seeking federal habeas review of a state court conviction, a petitioner must first
exhaust all "remedies available in the courts of the state."  28 U.S.C. §§ 2254(b)(1), 2254(c).  To
satisfy the exhaustion requirement, a petitioner must "fairly present" the claim to each state court
such that each would be alerted to "the federal nature of the claim."  Baldwin v. Reese, 541 U.S.
27, 29 (2004).  So long as the state courts had a "full and fair opportunity to resolve federal
constitutional claims before those claims are presented to the federal courts," the claims will be
deemed properly exhausted.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  In New York,
the petitioner must give the Court of Appeals, the state's highest court, an opportunity to review
the federal claim in order satisfy the exhaustion requirement.  Morgan v. Bennett, 204 F.3d 360,
369 (2d Cir.), cert. denied, 531 U.S. 819 (2000).

The question for exhaustion is merely whether a petitioner "still has a state avenue
available for raising his claims."  O'Sullivan. 526 U.S. at 851 (Stevens, J., dissenting).  If he may
bring the constitutional claim in state court, the federal court is prohibited from addressing the
claim.  Id.  Otherwise, the claim is properly exhausted.  The majority in O'Sullivan did not
dispute this assertion, expressly acknowledging how exhaustion differs from procedural default
for habeas purposes.  Id. at 848.

8

Since petitioner has presented his constitutional claim to New York courts and he no longer has any recourse to obtain resolution of the claim in those courts, his claim is properly exhausted.

B.  Timeliness of Application

In order to prevent dismissal, a petition for habeas corpus relief under §2254 must be filed within one year of the "conclusion of direct review."  28 U.S.C. §2244(d)(1)(A).  The United States Court of Appeals for the Second Circuit has held that the limitations period begins to run upon "completion of direct appellate review in the state court system and . . . if the prisoner elects not to file a petition for certiorari --  the time to seek direct review via certiorari has expired."  Williams v. Artuz, 237 F.3d 147, 151 (2d Cir.), cert. denied, 534 U.S. 924 (2001).

Petitioner's application for leave to appeal to the Court of Appeals was denied on July 24, 2014.  (A67).  Petitioner did not file a petition for a writ of certiorari with the United States Supreme Court, so his one-year time limit began to run 90 days after the denial of his leave application.  This petition has been filed before the expiration of the statute of limitation set forth in §2244(d)(1)(A), and therefore it must be considered timely.

C.  Standard of Review

In 1996, Congress effectuated major changes to the existing habeas corpus statute when it enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  The most critical provisions, and those with the widest impact, were the limitations on a federal court's ability to grant a habeas corpus petition challenging claims "adjudicated on the merits in state court proceedings" except in very narrow circumstances.  28 U.S.C. § 2254(d).  When the state court has ruled upon the merits and rejected the federal claims, the claims may only be reviewed by the habeas court in two circumstances.  In the first instance, a federal court may grant a

9

habeas petition if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The second exception gives a federal court permission to grant a petition if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

Though the phrase in the first exception might appear redundant, the Supreme Court has found the "contrary to" and "unreasonable application" clauses to have independent meanings. In Williams (Terry) v. Taylor, a majority of the Court explained:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas corpus relief with respect to a claim adjudicated on the merits in state court. . .
>
> A state-court decision will certainly be contrary to [Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

Williams (Terry) v. Taylor, 529 U.S. 362, 404-06 (2000) (O'Connor, J., for majority).  In other words, a state court decision is "contrary to clearly established federal law if it applies a legal rule that contradicts our prior holdings or if it reaches a different result from one of our cases despite confronting indistinguishable facts."  Ramdass v. Angelone, 530 U.S. 156, 165-66 (2000).

The "unreasonable application" clause applies if the state court "identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  Williams, 529 U.S. at 407.  It is also applicable where the state court "unreasonably extend[s] a legal principle" from a Supreme Court precedent to a situation in which it is inappropriate or when it fails to

extend such a principle to situation where it should apply.  Id.   In order for a federal court to grant a habeas petition under this prong of §2254(d)(1), the state court decision applying Supreme Court precedent must have been "more than incorrect or erroneous," it must have been "objectively unreasonable."  Wiggins v.  Smith, 539 U.S. 510, 520-21 (2003) citing Williams, 529 U.S. at 409.  The United States Court of Appeals for the Second Circuit has explained that in order to identify a state court decision as "unreasonable," there must be "[s]ome increment of incorrectness beyond error," but "the increment need not be great."  Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).  It must, however, amount to more than "simply disagreeing with the outcome" of the state court decision.  Rosario v. Ercole, 601 F.3d 118, 126 (2d Cir. 2010).

Both types of exception featured in §2254(d)(1) (the "contrary to" and "unreasonable application" clauses) refer to the state court's analysis of "clearly established" Supreme Court precedent.  Such precedent means the "holdings, as opposed to the dicta" established by the Supreme Court.  Williams, 529 U.S. at 412.  The federal court considering the habeas petition retains an "independent obligation to say what the law is under governing Supreme Court precedents" and the law in question may be "either a generalized standard enunciated in the [Supreme] Court's caselaw or a bright-line rule designed to effectuate such a standard in a particular context."  Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied 537 U.S. 909 (2002) (citations and internal quotations omitted).

Although the Supreme Court has eschewed any single methodology which a habeas court must utilize in reviewing a §2254 claim, it has suggested that the most efficient method requires that court to first analyze the merits of the constitutional claim and then assess whether the state court's reasoning or decision fits the clauses limiting relief in §2254(d)(1).  See e.g. Weeks v. Angelone, 528 U.S. 225 (2000); Ramdass, supra; Wiggins, supra; cf. also Kruelski v.

11

Connecticut Super. Ct., 316 F.3d 103 (2d Cir. 2003). The habeas court's analysis should focus not only on the result reached by the state court, but also the <u>reasoning</u> which it employed to reach a result inconsistent with clearly established Supreme Court precedent. See <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).

It is worth noting that while a federal court reviewing a habeas petition may offer a specific clause under §2254(d)(1) warranting habeas relief, it need not do so. In other words, many federal Courts of Appeal have granted relief without identifying the particular prong of §2254(d)(1) relied upon to reach that result. <u>Cf</u>. <u>e.g.</u> <u>Stark v. Hickman</u>, 455 F.3d 1070, 1078-79 (9th Cir. 2006) (state court's ruling on constitutional issue was "contrary to, or involved an unreasonable application of, clearly established federal law"); <u>Bates v. Bell</u>, 402 F.3d 635 (6th Cir.), <u>cert</u> <u>denied</u>, 546 U.S. 865 (2005) (habeas granted without elaboration on prong of §2254(d)(1)); <u>Mollett v. Mullin</u>, 348 F.3d 902, 922 (10th Cir. 2003).

II.     <u>Discussion of Due Process Claim</u>

It is a fundamental tenet of constitutional due process principles that a defendant must be given notice of the charge he faces so that he may prepare and defend himself against that charge in court. Petitioner was deprived of adequate notice and his due process rights were violated when he pleaded guilty because he was not informed that the statute upon which he was convicted, Possession of a Sexual Performance by a Child, required proof that he took an affirmative act to secure this performance. Instead, the record suggests only that he possessed the illicit material on his computer without any offer of proof that he was responsible for it being there. Put another way, the court, parties, and petitioner were under the impression that a defendant may be convicted of this statute for simply possessing the illicit material on his computer, regardless of

12

whether he actually sought and intentionally obtained such material.  Essentially, they were under the impression that it was akin to a strict liability offense.

However, after petitioner's conviction and before his sentence was imposed, the New York Court of Appeals rejected this interpretation of the New York statute, concluding that "some affirmative act is required (printing, saving, downloading, etc.) to show that [a] defendant in fact exercised dominion and control over the images" in question.  People v. Kent, 19 N.Y.3d 290, 302 (2012).  As petitioner's conviction was not yet final, this authoritative interpretation of the statute applied to his case.  Since there is no indication in the record that he was ever informed of this "affirmative act" requirement, a critical element of the offense, his plea was involuntarily given and his conviction violates due process.  Moreover, since the state appellate court decision reviewing this claim was objectively unreasonable in rejecting his argument, it is entitled to no deference.  This Court must grant the petition and vacate the conviction.

A.  Governing Law

A guilty plea "cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  Henderson v. Morgan, 426 U.S. 637, 645 (1976).  A conviction entered on the basis of an involuntary plea violates constitutional due process principles. Id. at 647.  A plea must be not only voluntary, but "intelligent."  Brady v. United States, 397 U.S. 742, 748 (1970).  An "intelligent" plea requires that the defendant be given "real notice of the true nature of the charge against him."  Henderson, 426 U.S. at 645 quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941).  In order for this requirement to be satisfied, the defendant must receive notice of the elements of the offense to which he will be pleading guilty.  Id.

In Bousley v. United States, the defendant argued that his plea was not intelligently given because the court "misinformed him as to the elements" of the offense of conviction and the record made plain that "neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged." Bousley v. United States, 523 U.S. 614, 618 (1998). The element in question, "use" of a firearm under the statute, had not been authoritatively interpreted at the time of the defendant's conviction. However, the Supreme Court later concluded in an unrelated case that the statute required "active employment of the firearm," behavior which Bousley was never alleged to have engaged in. Id. at 616. When Bousley learned of this statutory interpretation, he went back into court and sought to vacate his plea on the basis that it was not intelligently entered. The Court ruled that "were [his] contention proven" that the court and counsel misinformed him about the elements of the offense, Bousley's conviction would be constitutionally invalid. Id. at 618. The argument, that the plea was not "knowing and intelligent," presented "nothing new" in that it had been addressed 30 years earlier in O'Grady. Id. In other words, this was a well-established proposition of constitutional law.

The Court later reiterated this due process principle in Bradshaw v. Stumpf, explaining that "where a defendant pleads guilty to a crime without having been informed of the crime's elements," the due process standard "is not met and the plea is invalid." Bradshaw v. Stumpf, 545 U.S. 175, 182 (2005). The Court added that it is not necessarily the judge's responsibility to explain the elements of the offense to the defendant so long as the "record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel."

14

Id. at 183.  This may be satisfied by counsel's "assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty."  Id.

    B.  Application of Law to the Facts

On March 16, 2012, petitioner pleaded guilty to Possession of a Sexual Performance by a Child, a class E felony prohibited in New York Penal Law section 263.16.  At the time of petitioner's conviction, the statute provided that "[a] person is guilty of possessing a sexual performance by a child when, knowing the character and content thereof, he knowingly has in his possession or control any performance which includes sexual conduct by a child less than sixteen years of age."  Kent, 19 N.Y.3d at 300.  In a superior court information filed the same day, petitioner was charged in an instrument which tracked the language of that statute closely, alleging that petitioner "did knowingly possess an image of a sexual performance by a child."  (A1).

At his plea hearing, the court asked petitioner: "by your plea of guilty in this case, sir, do you admit that on April 21, 2011. . . being aware of the fact that these things were on your computer, that you were in possession of child pornography, that being an image of a female child five years of age exposing her genitals in a lewd fashion?"  (A14). Petitioner answered "yes."  (A14).  No further facts were elicited from petitioner.

On May 8, 2012, not two months after petitioner's plea hearing, the New York Court of Appeals issued its decision in Kent.  The court noted that this was its first opportunity to "determine the extent to which the current statutory scheme applies to child pornography distributed and consumed over the internet."  Kent, 19 N.Y.3d at 299-300.  In that case, the images in question were apparently present in the defendant's

computer's internet cache, meaning that their presence on the computer was not necessarily intentional.  Id. at 299-303.  The court concluded that in order to prove possession by cached files under P.L. §263.16, the "defendant's conduct must exceed mere viewing to encompass more affirmative acts of control such as printing, downloading or saving."  Id. at 301.

The court in Kent went on to hold that when illicit images have merely been viewed, "that [a] defendant had the theoretical capacity to exercise control over them during the time they were resident on the screen is not enough to constitute their procurement or possession" under the statute.  Id. at 302.  Viewing alone does not demonstrate "knowing control," and "some affirmative act is required (printing, saving, downloading, etc.) to show that" a defendant has "exercised dominion and control" over the images on his computer.  Id. at 303.  "To hold otherwise would extend the reach of article 263 to conduct-- viewing-- that our Legislature has not deemed criminal."  Id.  The Court of Appeals therefore reversed several of Kent's convictions for material contained in his computer's cache which the People failed to prove he "downloaded, saved, printed or otherwise manipulated or controlled."  Id.

In affirming certain other possession convictions, the court found that evidence, viewed in the light most favorable to the People, established that the defendant acquired the illicit material knowingly. Proof for these convictions included evidence of his pattern of browsing for child pornography sites, his "meticulous cataloguing of thumbnail images of young. . . girls; his deletion of illegal images and retention of legal ones;" and his internet messages discussing the content of his images and websites he had visited.  Id.

Simply put, Kent's actions regarding these materials suggested his possession was knowing and intentional.

The Kent decision concluded that under P.L. §263.16, as it then was written, a defendant charged with possessing child pornography on a computer must be proven to have intentionally placed it there, either by downloading, saving, printing, or otherwise manipulating it.

The record of petitioner's plea hearing does not in any way suggest that petitioner was advised in detail about the legalities of the charges he faced. Defense counsel barely spoke on the record, and the court merely inquired as to whether petitioner "Had enough time to speak with Mr. Hardy before deciding whether to plead guilty" and "was satisfied with the manner in which [Hardy] represented [him]?" (A10). The court did not ask if defense counsel explained the specific charges petitioner faced or the legal intricacies of those charges. The court then asked if petitioner understood that he was waiving certain trial rights which he would have at trial, including the People's burden of proving his guilt beyond a reasonable doubt. (A10-11). There was no reference to the specific charge in the case, and thus no reference to the particular elements that the People would be required to prove if petitioner went to trial.

This is critical to petitioner's argument, because on the record generated here, it was entirely reasonable for petitioner to believe that he was guilty even if he took no affirmative act to secure the image(s) on his computer. However, once Kent was decided prior to petitioner's sentencing, this was a flatly incorrect legal conclusion. The Court of Appeals in Kent recognized that a defendant must have taken some affirmative act in order to be guilty under P.L. §263.16, and neither the defense attorney, nor the

17

prosecutor, nor the trial court acknowledged this crucial decision at petitioner's sentencing and none of the three inquired as to whether he wanted to withdraw or maintain his plea.  Nobody ensured that petitioner understood the charge to which he pled guilty in the first place, and nobody rectified this when the highest court in New York spoke directly to the People's burden in petitioner's case prior to his sentencing.  Under these circumstances, petitioner did not have "real notice of the true nature of the charges against him," the plea he entered could not be considered intelligently made, and his conviction violates due process.  Henderson, supra; see also Bousley, supra.

The "affirmative act" required under Kent was a critical element of the offense, and the Court of Appeals identified it as such before petitioner was sentenced.  The record from the hearing makes it clear that neither counsel nor the court advised petitioner of this essential element, and there is nothing to suggest that he knew or understood that he was legally guilty of possessing the images only if he took some affirmative action to obtain them. Cf. Henderson, supra; Bousley, supra.; cf. also Hicks v. Franklin, 546 F.3d 1279 (10th Cir. 2008); Waucaush v. United States, 380 F.3d 251 (6th Cir. 2004); United States v. Bradley, 381 F.3d 641 (7th Cir. 2004); United States v. Garth, 188 F.3d 99 (3d Cir. 1999); Maltsev v. Albany County Probation Department, 303 Fed. Appx. 973, 974 (2d Cir. 2008).

In Hicks, the Tenth Circuit found a petitioner's plea was not constitutionally adequate because he did not receive "real notice" of the nature of the charge and specifically of the "intent to cause death" element of the offense, one which was essential to the conviction.  Hicks, 546 F.3d at 1284-87.  Since the petitioner's colloquy with the judge contained no admission that would satisfy that intent element of the offense and

18

"because the court provided him with an incorrect understanding of the law in relation to the facts of his case," the plea was not intelligently made and the court vacated it under Henderson.  Id.

In Waucaush, the petitioner pleaded guilty under the mistaken impression that he had committed a federal crime.  Waucaush, 380 F.3d at 258.  However, subsequent caselaw modified the understanding of what constituted interstate commerce, and as a result "Waucaush pled guilty to conduct which simply was not a federal crime."  Id. "This type of misunderstanding-- a misconception about the statute's legal scope that results in the defendant pleading guilty to conduct which was not a crime-- typifies an unintelligent guilty plea."  Id.  The Sixth Circuit Court of Appeals recognized that the facts underlying Waucaush's plea did not change, but the legal significance of those facts did change as a result of intervening Supreme Court precedent.  Id. at 260.  As the petitioner's "misunderstanding of the law led him to plead guilty to conduct which the law had not made a crime, his plea was unintelligent" and his conviction was vacated.  Id. at 263.

The Second Circuit has acknowledged that "the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant" either by the court or by defense counsel.  Maltsev, 303 Fed. Appx. at 974.  Due process may be satisfied even if the record contains no specific reference to a critical element where the circumstances reasonably support an inference that the information was conveyed to the defendant.  Id.  In Maltsev, the petitioner acknowledged having discussed the details and facts with counsel, including defenses he might raise prior to entering his plea.  Id.

19

Here, there are no facts to suggest that defense counsel Hardy ever informed petitioner that in order to be guilty of possession under P.L. section 263.16 he had to have taken an affirmative act to obtain the illicit images.  In fact, the record does not even suggest that Hardy explained anything about the charges to petitioner.  The court's inquiry was deficient in this regard where there was no colloquy regarding the particular elements of the offense and no requirement that petitioner explicitly admit to any illicit conduct.[4]  The simple exchange in which the court asked if petitioner committed the offense and petitioner answered "yes" is problematic even if no particular catechism or script is required during an allocution.  Cf. Hanson v. Phillips, 442 F.3d 789, 799 (2d Cir. 2006).

"A defendant's clear understanding of the nature of the charge to which he is pleading guilty relates to the very heart of the protections afforded by the Constitution," and misunderstanding by all parties as to an essential element of that offense renders the plea constitutionally defective.  Bradley, 381 F.3d at 647.  This type of error affects a defendant's "substantial rights, as well as the fairness and integrity of the judicial proceedings."  United States v. Ochoa-Gonzalez, 598 F.3d 1033, 1038 (8th Cir. 2010).

Petitioner was not advised about an essential element of the offense prior to entering his plea, and it was thus not intelligently offered. As Kent was issued before petitioner's sentencing, it certainly applied to his case and the absence of any reference to the element in the record of the plea hearing should have put the court and defense counsel on notice of the obvious deficiency.  Instead, petitioner's rights were

---

[4] In this way, petitioner's case is distinguishable from the charges which were upheld in Kent.  There is no indication on the record that petitioner catalogued such materials or sent messages to others regarding the predicate images.

20

unequivocally violated, as was the fairness and integrity of the entire proceeding. The petition should be granted and his conviction vacated.

The Appellate Division Decision

In his direct appeal, petitioner argued that his conviction violated federal due process because there was never any reference to the "affirmative act" element addressed in Kent.[5]  (A33-39).   The crux of the argument was that (1) Kent interpreted the statute under which petitioner was convicted as requiring some proof of an affirmative act to obtain the illicit image; (2) petitioner was never put on notice of this element, calling into question the voluntariness of the plea, and the People offered no proof as to this element; and (3) petitioner's conviction was obtained in violation of federal due process.  The court found petitioner's appellate waiver to be invalid but found his claim to be unpreserved and thus unreviewable.  This conclusion was unreasonable for the reasons which will follow.  Infra pp. 22-27.  Regardless, the court ultimately concluded that, on the merits, petitioner's claim failed because "the facts admitted by the defendant during his plea allocution were sufficient to support his plea of guilt."  Terry, 115 A.D.3d at 684. This is patently incorrect, as there was simply no reference in the entire plea hearing to the "affirmative" act referenced by the New York Court of Appeals in Kent.

It is deeply troubling that the Appellate Division failed to even reference Kent, the critical and paramount case interpreting Penal Law section 263.16, in its decision.  This error is particularly disturbing because the case was explicitly and repeatedly cited in petitioner's brief to that court.

---

[5] While appellate counsel identified a specific federal due process violation in suggesting that the conviction was secured in violation of In re Winship, 397 U.S. 358 (1970), the broader strokes of the precise argument here were also presented to the Appellate Division. The true harm, that petitioner was never notified of the affirmative act element identified in People v. Kent, is apparent from the record.

C.  <u>The Adequate and Independent State Grounds Procedural Bar Does Not Apply</u>

New York's preservation rule requires that any question of law be presented to a trial court so that it may have an opportunity to correct the error "at a time when the issue can be dealt with most effectively."  <u>People v. Lopez</u>, 71 N.Y.2d 662, 665 (1988); <u>see</u> N.Y. C.P.L. §470.05.  The Court of Appeals in <u>Lopez</u> noted that "in order to preserve a challenge to the factual sufficiency of a plea allocution there must have been a motion to withdraw the plea" or a motion to vacate the conviction.  <u>Id</u>. at 665.   "Subsequent case law has made clear that a postallocution motion is generally required to raise other claims that a guilty plea is invalid" and this may even include "challenges to the voluntariness of a guilty plea."  <u>People v. Tyrell</u>, 22 N.Y.3d 359, 363 (2013).

The court in <u>Lopez</u> noted, however:

> In that rare case. . . where the defendant's recitation of the facts underlying the crime pleaded to clearly casts significant doubt upon the defendant's guilt or otherwise calls into question the voluntariness of the plea, we have held that the trial court has a duty to inquire further to ensure that the defendant's guilty plea is knowing and voluntary.

<u>Lopez,</u> 71 N.Y.2d at 666 (internal citations omitted).  Where an allocution "negates an essential element of the crime pleaded to," the court must inquire "to ensure that defendant understands the nature of the charge and that the plea is intelligently entered."  <u>Id</u>.  In <u>Lopez</u>, the defendant's allocution did just this, and the court queried to protect the validity of the plea.  <u>Id</u>. at 667.

In rejecting petitioner's argument here, the Appellate Division found that his claim was unpreserved because he failed to move to withdraw his plea, citing to <u>Lopez</u>. <u>Terry</u>, 115 A.D.3d at 683.  The court found that the exception to the preservation

requirement did not apply because petitioner's allocution "did not clearly cast significant doubt on his guilt, negate an essential element of the crime, or call into question the voluntariness of the plea." Id. at 684.  The court then went on to address and reject the argument on the merits anyway.  Id.

Habeas corpus review of a federal claim is generally not permitted if the state court decision "rest[ed] on a state law ground that [was] independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991).  The Second Circuit has recognized that New York's preservation rule constitutes an independent state ground to support a finding of procedural default.[6] See Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999).  However, that same court has held that it may not always constitute an adequate state ground.  See Cotto v. Herbert, 331 F.3d 217 (2d Cir. 2003).  In order to review the adequacy of the claim, a habeas court must look at "whether application of the procedural rule is 'firmly established and regularly followed' in the specific circumstances of the case." Id. at 240.

The Second Circuit in Cotto identified a three-part inquiry to be used in assessing whether a state procedural rule was applied regularly and even-handedly enough to preclude habeas review on the merits in a particular case.  Id. at 239-42, citing Lee v. Kemna, 534 U.S. 362 (2002).  The inquiry is geared towards determining whether the procedural rule was misapplied in that case.  Id. at 240.  First, the reviewing court must

---

[6] It is worth noting, however, that at least one federal District Court has found that where an Appellate Division rejected a challenge to a guilty plea on grounds similar to this case and cited to People v. Lopez, which itself contemplates issues of federal constitutional due process, the lack of preservation was "interwoven with a determination made under federal constitutional law" that the plea was voluntary and therefore the decision did *not* rest on an independent ground and was not procedurally barred.  Babi v. Laclair, 2009 U.S. Dist. LEXIS 43464, *25-28 (S.D.N.Y. 2009).

determine whether the state court actually relied upon the procedural rule in its ruling and whether compliance would have changed the state court's ruling.  Id. at 240.  The Second Circuit noted that this consideration is rarely relevant in cases involving preservation or objection challenges as the trial court would rarely if ever mention the absence of an exception.  Id. at 242.  The same logic applies to a Lopez error.

The second factor referenced in Cotto is whether the state caselaw demands compliance with the rule in similar circumstances.  Id. at 240.  The application of this factor is far less clear given the exceptions contained in Lopez and cited by the Appellate Division here.  While many District Courts in this Circuit have acknowledged that the Lopez rule is adequate to serve as a procedural bar, some have found that it might not be if the case were to fall within one of the aforementioned exceptions to the preservation rule.  See e.g. Garcia v. Boucaud, 2011 U.S. Dist. LEXIS 50416, *10 (S.D.N.Y. 2011); Hunter v. McLaughlin, 2008 U.S. Dist. LEXIS 12845, *9 (S.D.N.Y. 2008); Anaya v. Brown, 2006 U.S. Dist. LEXIS 62186, *22-23 (S.D.N.Y. 2006).

In People v. Worden, the New York Court of Appeals utilized an exception to the Lopez rule in reaching the merits of a challenge to the guilty plea, finding that the defendant's allocution negated an essential element of the offense.  People v. Worden, 22 N.Y.3d 982, 985 (2013).  The court then found that the "prosecution, defense counsel, and the trial court all misunderstood the definition of 'lack of consent' under Penal Law 130.25(3)" and therefore the plea was not intelligently and voluntarily entered.  Id. at 984-85.  While the allocution did not negate an essential element of the offense, one was clearly omitted entirely and "on these facts, the salutary purpose of the preservation rule [was] not jeopardized."  Id at 986 citing Lopez, 71 N.Y.2d at 666.

The Court of Appeals has also held that "where a deficiency in the plea allocution is so clear from the record that the court's attention should instantly have been drawn to the problem, the defendant does not have to preserve a claim that the plea was involuntary." People v. Peque, 22 N.Y.3d 168, 182 (2013). Even if the plea was not plainly inadequate at the time it was taken in March, 2012, it surely was after Kent was issued two months later and thus was facially deficient at the time of the sentencing in June, 2012.

Considering these authoritative New York decisions addressing exceptions to the preservation rule, it is clear that "compliance with the contemporaneous objection rule [was] not demanded in the specific circumstances presented." Monroe v. Kuhlman, 433 F.3d 236, 242 (2d Cir. 2006). The Appellate Division's refusal to consider the claim for lack of preservation was an "exorbitant application" of the rule and does not bar review of his claim here. Cf. Fulton v. Graham, 2015 U.S. App. LEXIS 16153 (2d Cir. 2015).

The third and final factor is whether the petitioner "substantially complied" with the rule. Cotto, 331 F.3d at 240. In considering this factor, courts "must keep in mind the asserted state interest behind the contemporaneous objection rule- to ensure that the parties draw the trial court's attention to any potential error while there is still an opportunity to address it." Monroe, 433 F.3d at 245. While it is true that defense counsel did not comply with the rule here, the New York Court of Appeals in Lopez, Worden, and Peque has suggested that the court bears some responsibility for ensuring that a plea is adequate and voluntary, and where the record plainly shows otherwise, preservation is not required.

25

After weighing these factors, this Court should find that the Second Department improperly applied the procedural rule, petitioner's claim is not procedurally barred, and the Court should proceed to review the merits of his claim.

Excusing the Procedural Default

If this Court finds the procedural rule was properly applied, however, it should still review petitioner's due process claim. The Supreme Court has held that federal courts are "empowered under 28 U.S.C. §2254 to look beyond a state procedural forfeiture and entertain a state prisoner's contention that his constitutional rights have been violated." Reed v. Ross, 468 U.S. 1, 9 (1984). Specifically, this Court may still review petitioner's claim on the merits if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim(s) will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 749-50. The latter ground applies here.

It would be a miscarriage of justice for the Court not to reach the merits of his due process argument. This exception was designed to protect against a "fundamentally unjust incarceration," one example of which would occur where the defendant is actually innocent of the offense. House v. Bell, 547 U.S. 518, 537 (2006). Actual innocence is one specific rule used to "implement this general principle." Id. at 536.[7] Under the actual innocence standard, the question arises as to whether it is "more likely than not that no reasonable juror would have convicted" the defendant and the standard means

---

[7] See also Sawyer v. Whitley, 505 U.S. 333, 361 (1992) (Stevens, J., concurring)("while the conviction of an innocent person may be the archetypal case of a manifest miscarriage of justice, it is not the only case.") (emphasis added).

"factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623 (internal quotations and citations omitted).

Here, there is simply no evidence that petitioner affirmatively took actions to place the images in question on his computer. In that regard, it is distinguishable from the charges in Kent which were upheld by the Court of Appeals.

Moreover, petitioner's incarceration is fundamentally unjust because on the facts which comprise the record, he is actually innocent of Penal Law section 263.16. Cf. e.g. Waucaush, 380 F.3d at 260. Absent any proof that petitioner affirmatively acted to obtain the illicit images on his computer, no reasonable juror could have convicted him.

For these reasons, refusal to review the merits of his sufficiency claim would be a miscarriage of justice.

D.  The New York Court's Unreasonable Application of Clearly Established Supreme Court Precedent

To obtain relief under this 28 U.S.C. §2254, a petitioner must now show that there is "no possibility fair-minded jurists could disagree that the state court's decision conflicts with" Supreme Court precedents and the state court decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). More than forty years ago, the Supreme Court acknowledged that a guilty plea must be voluntarily and intelligently given. Brady, supra. A few years later, the Court recognized that an "intelligent" plea can be offered only where the defendant has been given "real notice of the true nature of the charge against him" and that such notice includes notice of the elements of the offense. Henderson, 426 U.S. at 645. Nearly twenty years ago, the Court found that where the parties and court failed to

27

correctly understand an element of the offense to which a defendant was pleading guilty and the defendant was inadequately informed as a result of this confusion, the resulting plea would be constitutionally invalid.  Bousley, supra.  The analytical landscape for petitioner's due process claim is clear and well-established.

There is no question that Kent changed the law with regard to the elements required to prove Penal Law section 263.16.  There is no question that petitioner's "allocution," meaning his affirmative answer to the court's boilerplate and non-specific questioning about the offense, did not in any way suggest that he affirmatively acted to obtain the illicit images which formed the basis of his conviction.  It is also indisputable that the court did not inform petitioner of the elements of the offense or inquire as to whether he understood those elements prior to accepting his plea, nor did the court inquire regarding petitioner's understanding of the elements at the sentencing when it was objectively clear that the original allocution was no longer valid.

The only uncertainty here is whether defense counsel Hardy ever informed petitioner of the elements of "Possession of Sexual Performance by a Child" in the New York Penal Law.  The court did not inquire about this at the plea hearing.  Instead, it simply asked if petitioner "had enough time to speak with Mr. Hardy before deciding whether to plead guilty here today," and whether petitioner was "satisfied with the manner in which [Hardy] has represented you?"  (A10) (emphasis added).   There is certainly no reason to believe that Hardy properly advised petitioner about the offense or its elements on the basis of the record created by the court.  Pursuant to Brady, Henderson, and Bousley, it is clear that petitioner's guilty plea was not intelligently entered and his conviction violates federal due process.  The Appellate Division decision

28

concluding otherwise, which failed to even cite the seminal case (<u>Kent</u>) announcing a critical and dispositive change in law, is entitled to no deference because there is no possibility that fair-minded jurists could disagree on this conclusion.

This Court should grant the writ and vacate petitioner's conviction.

## <u>CONCLUSION</u>

Petitioner's writ of habeas corpus should be granted because he was deprived of notice regarding a critical element of the offense, the resulting plea was not intelligently entered, and his conviction was obtained in violation of the United States Constitution.

Respectfully submitted,

KENT V. MOSTON
Attorney for Petitioner

By:  _/s/ DAVID BERNSTEIN_____

JEREMY L. GOLDBERG
DAVID BERNSTEIN (DB-7476)
Of Counsel

October, 2015

Legal Aid Society of Nassau County
40 Main St., 3rd Fl.
Hempstead, NY 11550
Phone: 516-560-6424

29