UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

TREVOR TERRY,

                       Petitioner,

          -against-

JOHN FOWLES,

                       Respondent.

-------------------------------------------------------------------X

For Online Publication Only

**FILED
CLERK**

2:18 pm, Sep 15, 2021

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**MEMORANDUM AND ORDER**
15-CV-05800 (JMA)

**APPEARANCES:**

Jeremy L. Goldberg, Esq.
David Bernstein, Esq.
Legal Aid Society of Nassau County
40 Main Street, 3rd Floor
Hempstead, NY 11550
      *Attorney For Petitioner*

Cristin Connell, Assistant District Attorney
Alyson Gill, Assistant Attorney General
Madeline Singlas, District Attorney of Nassau County
262 Old Country Road
Mineola, NY 11501
      *Attorneys For Respondent*

**AZRACK, United States District Judge:**

      Petitioner Trevor Terry ("Terry"), through counsel, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Terry pled guilty to Possessing a Sexual Performance by a Child, in violation of New York Penal Law § 263.16, and was later sentenced, in accordance with his negotiated plea, to four (4) months of incarceration followed by ten (10) years of probation and mandatory Sex Offender Registration.

      In the pending petition, Terry asserts one ground for habeas relief—that his guilty plea was invalid. Terry contends that his plea was not intelligent because he was not advised of the requisite elements of the offense. For the following reasons, Terry's petition is DENIED.

# I. BACKGROUND

The following facts are taken from the petition, the parties' submissions, and the state court record.[1]

## A. The Guilty Plea and Sentence

On June 21, 2011, a search warrant was executed at Terry's home, his electronic devices were seized, and he was arrested.  ((Presentence Investigation Report ("PSR"), May 31, 2012, at 1, ECF No. 7-3.)  Terry was initially charged with five counts of possessing a sexual performance by a child, under N.Y. Penal Law § 263.16, and five counts of promoting a sexual performance by a child, under N.Y. Penal Law § 263.15.[2]  (Connell Aff. 8.)

On March 16, 2012, Terry signed, in open court, a waiver of his right to be prosecuted by indictment and agreed to proceed by a Superior Court Information charging him with a single count of possessing a sexual performance by a child.  (Connell Aff. ¶ 9; Information, ECF No. 1-3; Waiver of Indictment, ECF No. 1-3; Plea Tr. 3.)

---

[1]  The record before the Court includes:  (1) the March 16, 2012 Superior Court Information against Terry; (2) his waiver of indictment; (3) the transcript of plea hearing; (4) a copy of Terry's pre-sentence report; (5) the transcript of his sentencing hearing; and (6) the briefs submitted by the parties to the Appellate Division and the Court of Appeals. The record also includes an affidavit from Assistant District Attorney Cristin Connell recounting the factual background of the case.  (Connell Aff., ECF No. 7.)  The facts set out in this affidavit were taken from the pre-sentence report as well as from a crime report prepared by the Nassau County Police Department.  (Id. at ii n.1.)  The background facts provided in the Connell Affidavit were also included in Respondent's Brief to the Appellate Division.  Terry's papers, in both state court and to this Court, do not challenge the accuracy of any of the facts set out in the Connell Affidavit.

[2]  Under § 263.16:

> A person is guilty of possessing a sexual performance by a child when, knowing the character and content thereof, he knowingly has in his possession or control, or knowingly accesses with intent to view, any performance which includes sexual conduct by a child less than sixteen years of age.

Under § 263.15:

> A person is guilty of promoting a sexual performance by a child when, knowing the character and content thereof, he produces, directs or promotes any performance which includes sexual conduct by a child less than seventeen years of age.

The term "[p]romote means to procure, . . . give, provide, transfer, . . . distribute, circulate, disseminate, . . . or to offer or agree to do the same."  N.Y. Penal Law § 263.00(5).

2

The Information charged:

> The defendant, Trevor Terry, . . . on or about the 21st day of April, 2011, knowing the content and character thereof, knowingly had in his possession or control any performance which includes sexual conduct by a child less than sixteen years of age, to wit:  the defendant, while knowing the content and character thereof, did knowingly possess an image of a sexual performance by a child.  Said image, labeled "Andina3 Five Yo Mom Pop Doing Nasty Stuff (Pthc,Pedo,Incest, Kiddy) 7m35S", contains the image of a female child, approximately five years of age, lewdly exposing her genitals.

(Information, ECF No. 1-3.)

That same day, Terry appeared with counsel before the Honorable William J. O'Brien and pled guilty to the single "reduced charge" set out in the Information.  (Plea Tr. 4.)  His plea was in "full satisfaction of the [Information] and the underlying charges."  (Id. at 3)  The plea was contingent on Terry receiving a four-month prison sentence and ten years of probation.  (Id. at 4.)  Terry was also subject to mandatory sex offender registration.  (Id.)  As part of the plea, Terry also surrendered, for destruction, his two computers.  (Id.)  At the time of his plea, Terry was twenty-two years old and was scheduled to graduate college in a few months.  (Id. at 11.)

At the outset of his plea hearing, both the clerk and the prosecutor explained that Terry was charged with possessing a sexual performance by a child.  (Id. at 3.)  Then, Judge William J. O'Brien told Terry:

> I'm going to ask you a serious of questions that are designed to make sure that you understand what's happening here today and that you're in agreement with it.  If at any time during the course of my questioning you find that you don't understand something I'm asking, please let me know.

(Id. at 5.)

During the plea colloquy, Terry was asked if he "had enough time to speak with [defense counsel] before deciding whether to plead guilty" and whether he was "satisfied with the manner in which [defense counsel] represented [him]."  (Id. at 6.)  Both times, he replied in the affirmative.

3

Judge O'Brien also reviewed the constitutional rights Terry was forfeiting by entering a guilty plea.  (Id. at 6-7.)  Terry acknowledged the rights he was giving up, including his waiver of the right to appeal.  (Id. at 6-8.)

Terry and Judge O'Brien then engaged in the following exchange:

> The Court:  Mr. Terry, by your plea of guilty in this case, sir, do you admit that on April 12, 2011, in the county of Nassau, being aware of the fact that these things were on your computer, that you were in possession of child pornography, that being an image of a female child five years of age exposing her genitals in a lewd fashion?
>
> The Defendant:  Yes.
>
> The Court:  People satisfied?
>
> [The Prosecutor]:  Yes, we are, your Honor.
>
> The Court:  The Court is satisfied as well.  The Court is satisfied that the defendant understands the nature and the consequence of his plea.  The Court is satisfied that the defendant has discussed the waiver of his rights with his attorney and finds that it is in the interests of justice to accept the plea from the defendant.  The clerk is authorized to do so at this time.
>
> The Clerk:  Okay, sir.  Is it now your intention to plead guilty to one count of 263.16, possession of a sexual performance by a child in satisfaction of SCI 465N of 2012?
>
> The Defendant:  Yes.

(Plea Tr. 10-11.)

Prior to sentencing, the Probation Department issued a Presentence Report on May 31, 2012, which sets out the following details about Terry's offense.  Between April 21, 2011 and May 4, 2011, a detective from the Nassau County Internet Child Exploitation Section witnessed, and documented, during an online investigation that Terry used an online file sharing network to possess and promote numerous videos containing sexual performances by a child.  (PSR at 1.)  On June 21, 2011, a search warrant was executed at Terry's home, and he was arrested.  (Id.)  Terry

4

provided a written admission following his arrest.[3]  A review of electronic devices seized pursuant to the search warrant revealed that Terry was in possession of seventy-five videos containing child pornography.[4]  (Id.)

During his interview with the Probation Department, Terry admitted that, from 2009 (when he was nineteen) until his arrest in 2011, he used "Frost Wire" to search for child pornography and that he "downloaded images and videos."  (PSR at 1, 3.)  Terry admitted that he also downloaded child pornography videos when he was between fourteen and seventeen years old.  (PSR at 1.)

On June 13, 2012, Terry appeared before Judge O'Brien for sentencing. (Sentencing Tr.) Defense counsel informed the court that he had gone through the PSR with Terry, had explained "that in detail to him," and that Terry was "ready for sentence."  (Id. at 2.)  Terry and his counsel did not contest or dispute any aspect of the PSR at sentencing.  Terry briefly spoke at sentencing, stating "I'm sorry for everything.  I apologize to the Court for my actions."  (Id. at 3.)  Judge O'Brien then sentenced Terry to the promised four months of incarceration, ten years of probation, and mandated Sex Offender Registration.  (Sentencing Tr. 3.)

---

[3]  The PSR does not recount the content of this admission.  However, the brief submitted by Respondent in opposition to Terry's state court appeal explains that, after his arrest, Terry admitted downloading child pornography and told police that there was one particular video involving a 12-year-old child that he likes and repeatedly downloaded. (Respondent's Appellate Br. at 2, ECF No. 7-5.)

[4]  The particular "image" charged in the Information appears to have been a "video."  (See PSR at 1.)  Notably, the name of the electronic file, which is set out in information, further indicates that this is a video as the name includes the phrase "7m35S," which appears to be a reference to the length of the video.

B.  **Post-Conviction Proceedings**

    **1. The Direct Appeal**

On March 14, 2013, the Appellate Division, Second Department, granted Terry's motion for permission to file a late notice of appeal.  (Connell Aff. ¶ 11.)  On appeal, Terry argued that: (1) his appellate waiver was invalid and unenforceable; and (2) his guilty plea was invalid in light of the New York Court of Appeals' decision in People v. Kent, 19 N.Y.3d 290 (2012).

Kent was decided on May 8, 2012—after Terry's March 16, 2012 guilty plea, but more than a month before his June 13, 2012 sentencing.  In Kent, the New York Court of Appeals analyzed Sections 263.16 and 253.15 to determine when conduct constitutes "knowing[]" "possession" and "procurement" of child pornography that is distributed, consumed, and viewed over the internet.  The Court of Appeals in Kent disagreed, in part, with the Second Department's interpretation below of these statutes and concluded that the "mere viewing" of child pornography on a web browser, even if done knowingly, is not unlawful under these statutes.  Id. at 301.  The Court of Appeals also addressed the related issue of temporary Internet files, known as "cache" files, which are automatically stored on a computer when a user views an image over a web browser.[5]  Id. at 296.  The Court of Appeals indicated that the presence of such cache files on a defendant's computer is insufficient to constitute possession under these statutes even if the defendant is aware of the browser's caching function.  Id. at 301.  Rather, the Court of Appeals determined that "to possess . . . images, . . . the defendant's conduct must exceed mere viewing to encompass more affirmative acts of control such as printing, downloading or saving."  Id.  This

---

[5] "A cache contains images or portions of a Web page that are automatically stored when that page is visited and displayed on the computer screen; if the user visits the Web page again at a later date, the images are recalled from the cache rather than being pulled from the Internet, allowing the page to load more quickly."  Kent, 19 N.Y.3d at 296 (2012).

conclusion led the Court of Appeals to reverse two of the defendant's convictions that were premised on mere viewing and the unknowing presence of "cached" files on the defendant's computer.[6]  Id. at 303.  However, the Court of Appeals in Kent—like the Appellate Division below—affirmed Kent's convictions on the remaining 133 counts, which were premised on images and videos that had been downloaded and/or saved on the defendant's computer.  Id. at 304.

In his appeal, Terry argued that, in light of the Court of Appeals' decision in Kent, his plea was invalid and violated due process because he never admitted, during his plea allocution, to printing, saving, or downloading the child pornography at issue.  In a footnote, Terry sought to preserve this argument for habeas review by asserting that "[d]ue process was violated because every element of the crime was not established," citing In re Winship, 397 U.S. 358, 364 (1970). (Pet'r's Appellate Br. at 9–10 n.1, ECF No. 7-4.)

On March 5, 2014, the Second Department determined that Terry's waiver of his right to appeal was invalid because there was no written waiver in the record and the record did not indicate that Terry grasped the distinction between the waiver of his trial rights and his right to appeal.. People v. Terry, 115 A.D.3d 683, 683-84 (N.Y. App. Div. 2d Dep't. 2014).

The Appellate Division, however, proceeded to uphold Terry's conviction, explaining, in a short decision, that:

> [T]he defendant's challenge to the factual sufficiency of his plea allocution is unpreserved for appellate review since the defendant failed to move to withdraw his plea (see People v Lopez, 71 NY2d 662, 665 [1988]; People v Pellegrino, 60 NY2d 636, 637 [1983]; People v Colston, 68 AD3d 1130 [2009]). Moreover, the exception to the preservation requirement, as enunciated in People v Lopez (71 NY2d at 666), does not apply here because the defendant's allocution did not clearly cast significant doubt on his guilt, negate an essential element of the crime, or call into question the voluntariness of the plea (see People v Young, 88 AD3d 918 [2011]). In any event, the facts admitted by the defendant during his plea

---

[6]  Shortly after the Court of Appeals' decision in Kent, the New York Legislature amended § 263.16 to explicitly criminalize the situation where a person "knowingly accesses with intent to view" child pornography.  This amendment, which post-dates the conduct underlying Terry's conviction, is not relevant to instant habeas petition.

allocution were sufficient to support his plea of guilty (see People v Goldstein, 12 NY3d 295, 301 [2009]; People v Seeber, 4 NY3d 780, 781 [2005]; People v Fooks, 21 NY2d 338, 350 [1967], cert denied sub nom. Robinson v New York, 393 US 1067 [1969]).

Terry, 115 A.D.3d at 684.[7]

On July 24, 2014, the New York Court of Appeals denied Terry's request for leave to appeal. People v. Terry, 23 N.Y.3d 1043 (N.Y. 2014).

**2. The Instant Petition**

Terry, through counsel, filed the instant petition under 28 U.S.C. § 2254 seeking habeas corpus relief. (See Pet., ECF No. 1.) He asserts one ground for relief—that his guilty plea is invalid. Specifically, he asserts that his plea "was not intelligently made" because, in light of Kent, "he was deprived of notice of a critical element of the offense." (See Pet. at 5.)

**II. DISCUSSION**

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas corpus to state prisoners." Williams v. Taylor, 529 U.S. 362, 399 (2000) (O'Connor, J., concurring). Under AEDPA, a prisoner may file a habeas petition "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To make that showing, the petitioner must demonstrate: (1) the exhaustion of state

---

[7] In Goldstein—one of cases cited by the Second Department—the New York Court of Appeals rejected a claim that the defendant's plea allocution was inadequate, explaining that:

> [A]n allocution based on a negotiated plea need not elicit from a defendant specific admissions as to each element of the charged crime. . . . Indeed, no catechism is required in connection with the acceptance of a plea and we have refused to disturb pleas by canny defendants even when there has been absolutely no elicitation of the underlying facts of the crime. It is enough that the allocution shows that the defendant understood the charges and made an intelligent decision to enter a plea.

People v. Goldstein, 12 N.Y.3d 295, 301 (2009).

remedies, (2) the absence of a procedural bar, and (3) the satisfaction of AEDPA's deferential review of state court decisions. See id. § 2254.

Terry argues that his plea was not entered into intelligently because he was not given notice of a requisite element of the crime. Specifically, Terry maintains that he was not informed that, as set out in Kent, he could only be guilty of possessing images if took some affirmative act—such as downloading, saving, or printing—to obtain the files.

As set forth below, this claim is both procedurally barred and without merit. Accordingly, the Court denies Terry's petition in its entirety.

## A. **Terry's Claim is Procedurally Barred**

### 1. **Legal Standards for Analyzing Procedural Defaults in Habeas Cases**

It is well-settled that a federal court will not review a habeas petition "when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). For this reason, under the doctrine of procedural default, a federal court will not review "the merits of claims, including constitutional claims, that a state court declined to hear because the petitioner failed to abide by a state procedural rule." Martinez v. Ryan, 566 U.S. 1, 9 (2012). This procedural bar applies even if the state court addressed a claim's merits in the alternative, but also decided that claim on independent procedural grounds. See Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999).

To overcome a procedural bar a petitioner must show either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. A petitioner can establish the existence of a fundamental miscarriage of justice by showing that "he

9

is actually innocent of the crime for which he has been convicted." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)).

### 2. The Parties' Arguments and New York's Preservation Requirement

Terry challenged the validity of his plea in his direct appeal and the Appellate Division found that it was "unpreserved for appellate review since the defendant failed to move to withdraw his plea" and, citing People v. Lopez, 71 N.Y.2d 662, 665 (1988), found that the exceptions to this preservation requirement were not applicable. Terry, 115 A.D.3d at 684.

Under New York law, "[w]hen a defendant pleads guilty to a crime, he or she generally must move to withdraw the plea or otherwise object to its entry prior to the imposition of sentence to preserve a challenge to the validity of the plea for appellate review." People v. Williams, 27 N.Y.3d 212, 214 (2016). New York courts apply this preservation rule because "[t]he failure to make the appropriate motion denies the trial court the opportunity to address the perceived error and to take corrective measures, if needed." Lopez, 71 N.Y.2d at 665–666.

"In a line of cases beginning with People v. Lopez, however, [the New York Court of Appeals] clarified the existence of a narrow exception to the preservation requirement in rare cases . . . ." Williams, 27 N.Y.3d at 214 (emphasis added and citation omitted). As the Court of Appeals explained in Lopez:

> [W]here the defendant's recitation of the facts underlying the crime pleaded to clearly casts significant doubt upon the defendant's guilt or otherwise calls into question the voluntariness of the plea, we have held that the trial court has a duty to inquire further to ensure that defendant's guilty plea is knowing and voluntary. Thus, where a defendant's factual recitation negates an essential element of the crime pleaded to, the court may not accept the plea without making further inquiry to ensure that defendant understands the nature of the charge and that the plea is intelligently entered[]. Where the court fails in this duty and accepts the plea without further inquiry, the defendant may challenge the sufficiency of the allocution on direct appeal, notwithstanding that a formal postallocution motion was not made[]. In such cases, the court's attention should have been instantly

> drawn to the problem, and the salutary purpose of the preservation rule is arguably not jeopardized

Lopez, 71 N.Y.2d at 666 (1988) (emphasis added and citations omitted).

Decisions from the New York Court of Appeals make clear that not all claims by defendants that "attack[] the voluntariness" of their pleas on "due process grounds" are "categorically exempt from the preservation rule." People v. Williams, 27 N.Y.3d 212, 220 (2016); see also People v. Tyrell, 22 N.Y.3d at 363–64 2013). Instead, New York caselaw looks to whether "the court's attention should have been instantly drawn to the problem," Lopez, 71 N.Y.2d at 666, and whether the defendant had no practical ability to preserve his claim for vacatur of his plea, Williams, 27 N.Y.3d at 222 (explaining that decisions from the New York Court of Appeals indicate that even "if a defect in a plea allocution is clear on the face of the record and implicates due process, the defendant nonetheless must preserve his or her claim that the defect made the plea involuntary unless the defendant has no practical ability to do so").

In Terry's appeal, the Appellate Division found that Terry's claim was unpreserved and that Lopez's "rare cases" exception was inapplicable to his claim. Respondent asserts that this ruling constitutes an independent and adequate state law ground for the Appellate Division's decision and, thus, renders Terry's habeas claim procedurally barred. The Court agrees and finds Terry's claim is procedurally barred.

Terry challenges the application of the procedural bar on two grounds. Both challenges fail.

### 3. The Appellate Division Relied on an "Independent" State Law Ground

As Terry concedes, the Second Circuit has recognized that New York's preservation rule constitutes an independent state ground to support a finding of procedural default. See Garcia, 188 F.3d at 71; Pet'r's Mem. at 23.

11

Terry, however, suggests in a footnote that the procedural bar invoked by the Appellate Division here does not constitute a "independent" state law ground.  In support, Terry relies on Babi v. LaClair, No. 06-CV-14204, 2009 WL 1181615, at *10 (S.D.N.Y. Apr. 30, 2009).  In Babi, the Appellate Division had invoked the preservation requirement for the vacatur of pleas and concluded that the exceptions to the preservation requirement were not applicable because the "defendant's factual recitation did not negate an essential element of the crime pleaded to, or cast significant doubt upon his guilt, or otherwise call into question the voluntariness of his plea." Babi, 2009 WL 1181615, at *9 (quoting People v. Babi, 7 A.D.3d 468 (N.Y. App. Div. 1st Dep't 2004)).  On habeas review, the district court in Babi found the petitioner's habeas challenge to the voluntariness of his plea was not procedurally barred.  The district court in Babi reasoned that "the Appellate Division's rejection of Babi's claim for lack of preservation" and finding that the exception to the preservation requirement was inapplicable were "interwoven with a determination made under federal constitutional law that Babi's plea was voluntary" and, as such, "its ruling did not rest on an independent ground." Id. at *10.

As an initial matter, Terry waived this argument by raising it only in a passing footnote.

In any event, the Court also does not find Babi persuasive.  First, Babi is factually distinguishable.  In the decision addressing Terry's appeal, it is clear that the Appellate Division first decided the limited question of whether the exceptions to the preservation requirement recognized by New York caselaw were applicable and then decided, in the alternative, that Terry's underlying claim failed on the merits.  See Terry, 115 A.D.3d at 684 (considering whether Terry's allocution "clearly cast[ed] significant doubt on his guilt, negate[d] an essential element of the crime, or call[ed] into question the voluntariness of the plea") (emphasis added).  By contrast, in explaining why the exceptions to the preservation requirement were not applicable, the Appellate

Division in <u>Babi</u> engaged in a full-blown analysis of the merits and concluded that the record, in fact, established that Babi's plea was "knowing, intelligent and voluntary."   <u>People v. Babi</u>, 7 A.D.3d 468.

Second, in contrast to <u>Babi</u>, multiple federal district courts have—in cases where the Appellate Division found the exceptions to the preservation requirement were inapplicable— subsequently concluded that those determinations by the Appellate Division constituted an "independent" and "adequate" state law ground for purposes of applying the procedural bar.   <u>See</u> <u>Doe v. Perez</u>, No. 13-CV-921, 2015 WL 7444342, at *3 (N.D.N.Y. Oct. 30, 2015) (report and recommendation) (collecting cases), <u>adopted by</u>, 2015 WL 7432385 (N.D.N.Y. Nov. 23, 2015); <u>Coons v. Superintendent</u>, No. 11-CV-1502, 2014 WL 316757, at *7 (N.D.N.Y. Jan. 28, 2014); <u>Rojas v. Heath</u>, No. 11-CV-4322 2012 WL 5878679, at *7 (S.D.N.Y. Oct. 18, 2012) (report and recommendation), <u>adopted by</u>, 2012 WL 5878752 (S.D.N.Y. Nov. 16, 2012); <u>see also</u> <u>Mobley v. Zenzen</u>, No. 15-CV-1001, 2016 WL 1049007, at *7 (N.D.N.Y. Mar. 11, 2016).   This Court agrees and concludes that the Appellate Division's procedural denial of Terry's claim—which was premised on New York's preservation requirement and its attendant exceptions, and cited only state court decisions—was based on an independent state law ground.   <u>See</u> <u>Osborne v. Ohio</u>, 495 U.S. 103, 107–08 (1990) (finding—in case where state court rejected federal claim on the basis that that the petitioner had failed to object at trial and there was no plain error— that the state court's ruling constituted "an independent and adequate state-law ground"); <u>cf.</u> <u>Glenn v. Bartlett</u>, 98 F.3d 721, 725 (2d Cir. 1996) (holding that procedural bar applied even though the Appellate Division had also discussed the merits of the defendants' forfeited claim in determining "whether

to exercise its "interests of justice" jurisdiction" to consider the claim).[8]

New York's preservation rule, the exceptions to that rule for claims seeking vacatur of a guilty plea, and the consideration of that rule and those exceptions by the Appellate Division in Terry's appeal, were "independent" of federal law.

### 4. The Appellate Division's Ruling Was Not an Exorbitant Application of the Preservation Requirement for the Vacatur of Guilty Pleas

Terry also argues that the procedural bar should not apply because the Appellate Division's invocation of the New York's preservation rule in the circumstances of this case constituted an "exorbitant application" of the preservation rule (and its exceptions) and, thus, does not constitute an "adequate" state law ground.

"As a general rule, a state ground for decision will be deemed adequate to preclude habeas review of a federal claim if it stems from violation of a 'rule that is firmly established and regularly followed by the state in question.'" Whitley v. Ercole, 642 F.3d 278, 286–88 (2d Cir. 2011) (quoting Garcia, 188 F.3d at 77 (internal quotation marks omitted)). New York's preservation requirement rule for the vacatur of guilty pleas (and the attendant exceptions to that preservation requirement) are firmly established and regularly followed. Multiple courts have found invocations of this preservation rule for the vacatur of guilty pleas (and its attendant exceptions) were adequate to establish a procedural bar. See Mobleyz, 2016 WL 1049007, at *7 ("[F]ederal

---

[8] Terry's case is distinguishable from instances in which the Second Circuit has found the procedural ground cited by the state court was not independent of federal law. In Terry's case, the Appellate Division did not cite or discuss any federal caselaw. Compare Roy v. Coxon, 907 F.2d 385, 391 (2d Cir. 1990) (finding that the Vermont Supreme Court's plain-error analysis was not independent of federal constitutional law where the state court repeatedly cited and quoted a Supreme Court decision). The Appellate Division's decision in Terry's case is also not analogous to Brown v. Greiner, 409 F.3d 523, 532 (2d Cir. 2005), where the Second Circuit held that the New York Court of Appeals' procedural dismissal was "interwoven" with federal law. In Brown, the New York Court of Appeals—in deciding whether New York's "'mode of proceedings' error" exception to the preservation rule applied—first determined that the underlying claim was without merit and then used that determination to conclude that this exception was not applicable because there was no underlying error. Id. By contrast, in Terry's appeal, the Appellate Division first addressed the separate question of whether the exceptions under Lopez applied and, only then, decided, in the alternative, that Terry's underlying claim failed on the merits.

14

courts in this and other districts in New York, have routinely recognized that the preservation rule provides an adequate and independent state ground on which to deny habeas relief."); Doe v. Perez, 2015 WL 7444342, at *3; Rojas, 2012 WL 5878679, at *7; Hunter v. McLaughlin, No. 04-CV-4058, 2008 WL 482848, at *4 (S.D.N.Y. Feb. 21, 2008).

Nevertheless, Terry "seeks to rely on the narrow exception announced by the Supreme Court in Lee v. Kemna, [534 U.S. 362 (2002)], for those 'exceptional cases' in which application of an otherwise sound state rule is so 'exorbitant' as to render it 'inadequate to stop consideration of a federal question.'" Whitley, 642 F.3d at 287 (quoting Lee, 534 U.S. at 376).

The Supreme Court's decision in Lee sets out three "guideposts" that courts consider in determining whether a state court's decision constitutes an exorbitant application of a state law procedural rule.  The most relevant of these guideposts to Terry's case directs federal courts "to inquire as to how state courts apply the relevant rule to a party in petitioner's 'predicament,' and to evaluate whether the legal 'claim raised by the petitioner' is or 'is not regularly the subject of a procedural default in New York.'" Whitley, 642 F.3d at 290 (citations and internal marks omitted). While federal courts consider these "guideposts," the "truly critical inquiry" is, ultimately, whether the habeas court "can deem the application of a state rule so 'exorbitant' as to render it inadequate to preclude habeas review of the federal claim." Whitely, 642 F.3d at 288.

Terry cites to two cases from the New York Court of Appeals, which he contends establish that his compliance with the preservation requirement was "'not demanded in the specific circumstances presented'" here.  (Pet'r's Mem. at 25 (quoting Monroe v. Kuhlman, 433 F.3d 236, 238 (2d Cir. 2006)).  Neither of these cases, however, indicate that the Appellate Division's ruling here was an exorbitant application of the preservation rule for guilty pleas and the exceptions to that rule.

15

First, Terry contends that his case is comparable to <u>People v. Worden</u>, where an exception to the preservation requirement was found applicable.  <u>People v. Worden</u>, 22 N.Y.3d 982 (2013). Terry's case, however, is not comparable to <u>Worden</u>.  In <u>Worden</u>, the defendant pled guilty to third-degree rape.  The relevant criminal statute required that the victim must have "clearly expressed that . . . she did not consent to engage in the [sexual] act."  <u>Id.</u> at 984–85 (quoting N.Y. Penal Law § 130.05(2)(d)).  The statute also made clear that "incapacity to consent" was insufficient to establish the necessary of "lack of consent" for this crime.  <u>Id.</u> (quoting N.Y. Penal Law § § 130.25(3)).  Nevertheless, during the plea colloquy, the prosecutor sought to elicit from Worden that the victim was unable to consent because she was incapacitated.  <u>Id.</u> at 985.  Then, the court asked Worden if the victim "didn't give you consent because she took too much medication and she has a mental illness, correct?"  <u>Id.</u>  Worden answered this question in the affirmative.  Accordingly, the Court of Appeals determined that, through this answer, "defendant unequivocally negated an element of the crime to which he was pleading guilty," which triggered the "rare cases" exception to the preservation requirement under <u>Lopez</u>.  <u>Id.</u> at 985–86. The Court of Appeals also noted that the record showed that the prosecutor, defense counsel, and the court all misunderstood the statute.  <u>Id.</u> at 985.  However, contrary to Terry's claim, <u>Worden</u> did not find the exception to the preservation requirement on that basis.  Rather, the Court of Appeals in <u>Worden</u> made clear that the "rare case" exception was applicable because the defendant's factual recitation "negate[d] an essential element of the crime."  <u>Id.</u> at 985.  Here, Terry's allocution did not unequivocally negate an element of the charged crime.

Terry also asserts that the Appellate Division's application of the preservation requirement was exorbitant because, according to Terry, the deficiency in his "plea allocution is so clear from the record that the court's attention should have been instantly drawn to the problem."  <u>People v.</u>

16

Peque, 22 N.Y.3d 168, 182 (2013) (citing Lopez, 71 N.Y.2d at 665–666).  Contrary to Terry's claim, his plea was not clearly "facially deficient"—either when the plea was accepted or by the time of sentencing, which occurred after the Court of Appeals issued its decision in Kent.  Terry admitted during this allocution that he was in "possession of child pornography."  (Plea Tr. at 10–11.)  The fact that Kent subsequently provided further guidance on what specific conduct constitutes "possession" does not render Terry's plea clearly "facially deficient."  Moreover, by the time of sentencing, Judge O'Brien had reviewed the PSR, which explained that Terry had admitted to downloading videos and discussed Terry's use of an online file-sharing network.  The PSR, thus, provided ample reason for Judge O'Brien to conclude that Kent had no relevance to the circumstances of Terry's case.  Additionally, the PSR said nothing about cached files and did not suggest that Terry's conduct involved the mere viewing of images.  This was not a case where Judge O'Brien's attention should have been "instantly" drawn to the purported problem.  The Appellate Division's determination that the "rare cases" exception to the preservation rule was inapplicable here was not an exorbitant application of New York law.

Because the Appellate Division's ruling on state law grounds was both "independent" and "adequate," Terry's claim is procedurally barred.

### 5.  Terry Has Not Established Actual Innocence to Overcome the Procedural Bar

Terry does not assert that he can establish cause and prejudice to overcome this procedural bar.  Instead, Terry maintains that he can overcome the procedural bar based on the miscarriage of justice exception because, according to Terry, he is actually innocent of the crime for which he has been convicted.

"To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'"  Bousley

v. United States, 523 U.S. 614, 623 (1998) (quoting Schlup, 513 U.S. at 327-328 (internal marks omitted)). Actual innocence is "factual innocence, not mere legal insufficiency." Id. at 623-24. Additionally, in cases such as Terry's, "where the Government has forgone more serious charges in the course of plea bargaining, [the] petitioner's showing of actual innocence must also extend to those charges." Id. at 624. Thus, Terry must establish actual innocence for all ten of the original charges he faced and which were resolved by his plea to single "reduced" charge in the Information.

Terry asserts that there is "no evidence that [he] affirmatively took actions to place the images in question on his computer" and that his conviction "is fundamentally unjust because on the facts which comprise the record, he is actually innocent of [violating] Penal Law 263.16." (Pet'r's Mem. at 27.)

Terry's argument assumes that the only evidence that the Court can consider is his factual allocution. Terry, however, is mistaken. In analyzing his actual innocence claim, the Court can consider the facts and evidence set out in Terry's PSR, which, notably, he never objected to or challenged at sentencing.[9] See Lewis v. United States, No. 16-CR-0212, 2020 WL 3498710, at *2 (S.D.N.Y. June 29, 2020); Mizell v. United States, No. 14-CR-0212, 2020 WL 2216561, at *5 (S.D.N.Y. May 6, 2020). The PSR recounts Terry's admissions and the facts uncovered during the investigation of Terry, which establish that Terry downloaded images and movies and, thus,

---

[9] Respondent's opposition papers challenge Terry's actual innocence claim by relying on the PSR, which Respondent filed with its opposition papers. Terry did not file a reply brief and has never asserted that this Court cannot consider the PSR in adjudicating his actual innocence claim. Accordingly, the Court finds that Terry has waived any such objection, which would be meritless in any event.

would still be found guilty after <u>Kent</u>.[10]   In the face of this evidence, Terry has offered nothing. Because Terry has not established actual innocence, he cannot overcome the procedural bar and his claim must be denied.

## B. Terry's Claim Also Fails on the Merits

Even if Terry's claim were not procedurally barred, it fails on the merits.

### 1. AEDPA Standard of Review

If a state court reached the merits of a claim, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.SC. § 2254(d).  The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'" <u>Jones v. Stinson</u>, 229 F.3d 112, 119 (2d Cir. 2000).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."   <u>Williams v. Taylor</u>, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring).  A decision involves an "unreasonable application" of clearly established federal law

---

[10]   In opposing the petition, Respondent submitted an affidavit which recounts facts from both the PSR and a crime report that was prepared by the Nassau County Police Department.  The additional facts contained in this affidavit further confirm that Terry downloaded child pornography and that those videos were stored and saved on his hard drive.  (Connell Aff. ¶¶ 5–8.)  Other points in the record also further show that Terry downloaded the files at issue and did not merely view them on the internet.  Notably, the PSR explains that Terry used "Frost Wire," an online file-sharing network.  <u>Cf.</u> <u>United States v. Worthey</u>, No. 11-CR-00138, 2012 WL 12903721, at *2 (E.D. Ark. May 3, 2012) (rejecting sufficiency challenge to federal crime of possessing child pornography and recounting trial evidence, which explained how "FrostWire, a peer-to-peer file sharing program," saved files to a "saved folder" on the computer's permanent memory and not to a temporary cache), <u>aff'd</u>, 716 F.3d 1107 (8th Cir. 2013).

when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. This standard does not require that all reasonable jurists agree that the state court was wrong. Id. at 409–10.  Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Jones, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'" Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam)). This standard is "'difficult to meet.'" White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quoting Metrish v. Lancaster, 133 S. Ct. 1781, 1786 (2013)), reh'g denied, 134 S. Ct. 2835 (2014). A petitioner must show that the "state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 1702.

"Clearly established Federal law" [under 28 U.S.C. § 2254(d)(1)] "refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions." Smith v. Wenderlich, 826 F.3d 641, 649 (2d Cir. 2016) (quoting Carey v. Musladin, 549 U.S. 70, 74 (2006)) (interna marks omitted).

## 2.  Standard for Determining when a Guilty Plea is Voluntary and Intelligent

A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (quoting Brady v. United States, 397 U.S. at 748 (1970).  In Henderson v. Morgan, 426 U.S. 637 (1976), "the Supreme Court declared that a plea is involuntary, and therefore violates due process, if the defendant does not

receive 'real notice of the true nature of the charge against him,' including notice of the elements of the crime charged."  Maltsev v. Albany Cty. Prob. Dep't, 303 F. App'x 973, 973–75 (2d Cir. 2008) (quoting Henderson, 426 U.S. at 645).  Thus, "[w]here a defendant pleads guilty to a crime without having been informed of the crime's elements . . . the plea is invalid," id., because it is not "an intelligent admission of guilt," Henderson, 426 U.S. at 645.

There is a presumption that, in most cases, "defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." Henderson, 426 U.S. at 647.  This presumption that the defendant "was informed of the nature of the charge against him" can arise when, prior to pleading guilty, the defendant is "provided with a copy of his indictment," which includes the elements of the charge against him.  Bousley, 523 U.S.at 618–19.

Before addressing Terry's argument, it is helpful to briefly recount the details of three Supreme Court decisions cited by Terry that discuss claims that a guilty plea was not voluntary and intelligent.

In Henderson, the defendant challenged his guilty plea to second-degree murder because he was never informed that intent to cause the death of his victim was an element of the offense. The defendant, who was classified as "retarded" and had an "unusually low mental capacity," was originally charged, in an indictment, with first-degree murder.  Henderson, 426 U.S. at 641, 647. Then, as part of a plea deal, the defendant admitted to killing the victim and pled guilty to second-degree murder in satisfaction of the indictment.  The defendant, however, never received a formal statement of the charges—such as an indictment, information, or written plea agreement—setting out the elements of the crime, including the statutory requirement that he had the intent to cause the death of his victim.  Id. at 645, 649 n.2 (White, J., concurring).  At his plea hearing, neither the

21

court nor any of the attorneys mentioned this intent requirement—and the defendant's allocution did not include an admission that he had the requisite intent.  Id. at 642–43.  On habeas review, the district court granted the petition after holding a hearing.  At the hearing, the district court found that defense counsel never advised the defendant of this intent element.[11]  Id. at 640.  The Supreme Court upheld the grant of the petition, finding that under the "circumstances it is impossible to conclude that [the defendant's] plea to the unexplained charge of second-degree murder was voluntary."  Id. at 646.  The Supreme Court went on to explain that this error was not harmless because the defendant's "unusually low mental capacity . . . lends at least a modicum of credibility to defense counsel's appraisal of the homicide as a manslaughter rather than a murder."[12]  Id. at 647.

After Henderson, the Court discussed related issues about the voluntariness and intelligence of pleas in Bradshaw v. Stumpf, 545 U.S. 175 (2005), and Bousley v. United States, 523 U.S. 614 (1998).

In Bradshaw, 545 U.S. 183, the Supreme Court rejected a habeas petition where the petitioner argued that his plea of guilty to aggravated murder was invalid because he was not aware of the specific intent element of that charge.  In Bradshaw, defense counsel represented, during the plea hearing, that they had explained the elements of the murder charge to the defendant, who confirmed that this representation was true.  Id. at 183.  The Supreme Court found this was

---

[11] During this hearing, the defendant also testified that he would not have pled guilty to second-degree murder if he had known about this intent element.  Id. at 643–44.  The district judge did not indicate whether he credited that testimony.  Id.  In its decision, the Supreme Court assumed that the defendant "probably would have pleaded guilty anyway," but found that this "assumption is, however, an insufficient predicate for a conviction of second-degree murder.  Id. at 644 n.12.

[12] Henderson was decided in 1976, before the Supreme Court's decisions in Brecht v. Abrahamson, 507 U.S. 619 (1993), and Fry v. Pliler, 551 U.S. 112 (2007), which address the standard for harmless error review in the context of habeas claims brought under § 2254.

sufficient and explained that it is not necessary "that the judge . . . himself explain the elements of each charge to the defendant on the record." Id. at 183. The Supreme Court also rejected the petitioner's factual argument that, given the specific circumstances of his case—where he denied shooting the victim—that he "could only have pleaded guilty out of ignorance of the charge's specific intent requirement." Id. at 184.

Finally, in Bousley v. United States, 523 U.S. 614 (1998), the Supreme Court discussed, but only in dicta, the voluntariness of a guilty plea in circumstances with some parallels to Terry's case. In Bousley, the defendant pled guilty to "using" a firearm in violation of 18 U.S.C. § 924(c)(1). Id. at 616. The charges against Bousley stemmed from a search warrant that police executed at his house. Bousley v. Brooks, 97 F.3d 284, 286 (8th Cir. 1996).[13] Id. During the search, the officers found two coolers in the garage—inside the coolers were over seven pounds of methamphetamine, two loaded handguns and one loaded handgun. Id. The search also uncovered another 6.9 grams of methamphetamine and two loaded handguns in Bousley's bedroom. Id. In pleading guilty, Bousley admitted that he knew about the drugs and firearms in his bedroom and a smaller amount of drugs that were found in a coffee can in the garage. Id. Bousley, however, disclaimed knowledge of the drugs and firearms found inside the two coolers. Id.

Subsequently, five years after Bousley's guilty plea, the Supreme Court held that "use" under § 924(c)(1) requires the Government to show "active employment of the firearm." Bousley, 523 U.S. at 616 (quoting Bailey v. United States, 516 U.S. 137, 144 (1995)). This was "a more stringent standard than [the Eight Circuit] had previously applied." Bousley v. Brooks, 97 F.3d

---

[13] Although the Supreme Court's decision in Bousley does not provide much detail about the underlying facts, the Eighth Circuit's decision and the briefing to the Supreme Court provide further detail about Bousley's underlying claim, which the Supreme Court discussed in dicta.

284, 287 (8th Cir. 1996); see also Bousley v. Brooks, 1997 WL 805418, at *16 (Response Br. of the United States) (explaining that, at the time of Bousley's plea, Eighth Circuit precedent indicated that "'possession' of a firearm during and in relation to a drug offense constituted an offense").

When Bousley pled guilty, both the indictment and the factual stipulation in his plea agreement tracked the statutory language of § 924(c)(1) and referenced the statutory requirement that the defendant "use" the firearm "during and in relation to a drug-trafficking offense." Bousley v. Brooks, 1997 WL 805418, at *3–4 (Response Br. of the United States).  However, when the district court asked Bousley if he "knew what he was charged with . . . [he] initially responded, '[p]ossession of a firearm.'"  Id. at *4–5 (emphasis added).  The district court then explained to Bousley that he "was charged with 'possessing the firearms during and in relation to a drug trafficking crime.'"  Id. (emphasis added).  Although the district court's explanation of the charge comported with the Eighth Circuit's interpretation of the term "use" at the time of the plea, this explanation was incorrect, as the Supreme Court subsequently held in Bailey. Id. at *16–17.  It is also notable that the district court's explanation of the charge completely omitted the statutory term "use."

In light of the Supreme Court's decision in Bailey, Bousley sought to vacate his plea under 28 U.S.C. § 2255, arguing that it was not knowing and intelligent.  The Supreme Court held that although Bousley had procedurally defaulted his claim, he could overcome this procedural default by establishing actual innocence.  The Court remanded the case, explaining that if he could meet the standard for an actual innocence claim, then he would "be entitled to have his defaulted claim of an unintelligent plea considered on its merits."  Bousley, 523 U.S. at 624.

The Court also discussed, in dicta, the merits of the Bousley's underlying claim.  The Court first acknowledged that there was a presumption that Bousley was informed of the nature of the charges against him because, prior to pleading guilty, "he was provided with a copy of his indictment, which charged him with "using" a firearm."  Id. at 618.  Bousley, however, maintained that his guilty plea was, nevertheless, still "unintelligent because the District Court subsequently misinformed him as to the elements of a § 924(c)(1) offense."  Id.  The Supreme Court briefly addressed this point, stating:

> [i]n other words, petitioner contends that the record reveals that neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged.  Were this contention proved, petitioner's plea would be, contrary to the view expressed by the Court of Appeals, constitutionally invalid.

Id. at 618–19.  Again, this discussion was in dicta and, unlike the Court in Henderson, the Court in Bousley did not address the issue of harmless error.[14]

### 3.  Analysis

In arguing that his plea was not voluntary and intelligent, Terry stresses there are no facts in the record to suggest that "defense counsel . . . ever informed petitioner that in order to be guilty of possession under [§ 263.16] he had to have taken an affirmative act to obtain the illicit images," in accordance with the requirements of Kent.  (Pet'r's Mem. at 20.)  Terry asserts that it "was entirely reasonable for [him] to believe that he was guilty even if he took no affirmative act to secure the image[s] on his computer."  (Id. at 17.)

Terry, however, cannot show that the Appellate Division's determination was unreasonable given the facts and circumstances of his case.  Here, Terry was informed of § 263.16's statutory elements.  (See Information, Plea Tr. at 10–11.)  Terry nevertheless contends that his plea is invalid

---

[14]  Given Bousley's procedural default, he would first have to establish actual innocence in order to have his underlying claim heard on the merits.  Accordingly, if Bousley could establish actual innocence, it is likely that the alleged underlying due process violation, if established, would not have been harmless.

because, at the time of his plea, he was not informed of the New York Court of Appeals' interpretation of § 263.16, which was issued after he pled guilty.  However, nothing in the record suggests that <u>Kent</u>'s interpretation of the statute concerning mere viewing and temporary cache files had any relevance to Terry's case.  Both before and after <u>Kent</u>, downloading and saving files on a hard drive constituted unlawful possession under § 263.16.  It is reasonable to presume that defense counsel informed Terry of this, and there is certainly no evidence to the contrary.  Clearly established federal law does not indicate that a plea is unintelligent if the defendant is unaware of an interpretation of the statute that has not been shown to have any relevance to the circumstances of his case.  Terry cannot show the Appellate Division's decision was contrary to, or an unreasonable application of, clearly established federal law.

This conclusion is supported by a close review of the Supreme Court decisions on this topic—in <u>Bradshaw</u>, <u>Henderson</u>, and <u>Bousley</u>.

In <u>Bradshaw</u>, the Supreme Court denied the habeas petition at issue and nothing in <u>Bradshaw</u> is helpful to Terry.

And Terry's case is nothing like <u>Henderson</u>.  In <u>Henderson</u>, the defendant was <u>never</u> informed of the crime's statutory intent element.  Here, Terry was informed of § 263.16's statutory elements—including its possession requirement—and explicitly admitted that he was "in possession" of child pornography.  Notably, <u>Henderson</u> says nothing about the situation where a defendant is informed of all the relevant statutory elements of the charged crime, but there is a subsequent development in how those elements are interpreted.

As for <u>Bousley</u>—although it has some parallels to Terry's case—Bousley does not provide a basis for this Court to conclude that the Appellate Division's decision was contrary to, or an unreasonable application of, clearly established federal law.

26

First, while <u>Bousley</u> discussed the defendant's underlying claim, the Supreme Court never actually decided that issue and, instead, remanded the case for the courts below to consider whether the defendant could establish actual innocence in order to overcome the procedural bar that applied to his claim.  Thus, the Supreme Court's brief discussion concerning the merits of Bousley's underlying claim was dicta.

Second, <u>Bousley</u> is factually distinguishable from Terry's case.  In <u>Bousley</u>, the district court affirmatively misinformed the defendant about the elements of the crime.  In <u>Bousley</u>, the district court's explanation of the charged crime completely omitted the key statutory term "use" and substituted, in that element's place, the term "possession."  However, that interpretation of the governing statute—which had equated "use" with "possession"—was subsequently rejected by the Supreme Court.  Here, Judge O'Brien did not "misinform[]" Terry of § 263.16's statutory elements.  Moreover, Judge O'Brien never told Terry that he was charged with merely viewing child pornography or possessing temporary cache files.

Third, the underlying facts of <u>Bousley</u> show that the Supreme Court's subsequent narrow interpretation of § 924(c)(1) in <u>Bailey</u> had obvious potential ramifications for Bousley's case and could render his guilty plea unintelligent and involuntary.  Here, by contrast, there is nothing in the record suggesting that Terry merely viewed the images at issue or that he was being charged based on temporary "cache" files.  The Supreme Court has never held that a defendant's guilty plea will be rendered involuntary and unintelligent based on any subsequent change in the interpretation of the relevant criminal statute for the offense of conviction, irrespective of the potential relevance of that new interpretation to the circumstances of the defendant's particular case.  Terry has not made any showing that the interpretation of § 263.16 in <u>Kent</u> had any relevance to the circumstances of his case.  Terry's argument assumes that—irrespective of the facts and

27

circumstances of his case—his plea could not have been intelligent unless either the court or defense counsel had explained Kent's interpretation of § 263.16 to him prior to pleading guilty. It was not unreasonable for the Appellate Division to find to the contrary.

In addition to relying on the three Supreme Court cited above, Terry also cites to certain out-of-circuit decisions where guilty pleas were found to be involuntary and unintelligent. See Pet'r's Mem. at 18 (citing, inter alia, Waucaush v. United States, 380 F.3d 251 (6th Cir. 2004), and United States v. Bradley, 381 F.3d 641 (7th Cir. 2004)). A number of these decisions concern federal convictions and, thus, did not involve the application of AEDPA deference. Moreover, none of these cases addressing federal convictions convince me that the Appellate Division's decision in Terry's case was contrary to, or an unreasonable application of, clearly established federal law. The only other decision that Terry cites where a court granted a § 2254 habeas petition involving an involuntary plea claim is Hicks v. Franklin, 546 F.3d 1279 (10th Cir. 2008). Hicks, however, is analogous to the facts of Henderson and is distinguishable from Terry's case. See Hicks, 546 F.3d 1279 (granting habeas petition where the petitioner—who was originally charged with first degree murder and pled guilty after the prosecution orally amended the charge to second degree murder—was not informed either orally or in writing of the crime's "depraved mind" element and also "affirmatively indicate[d] to the court" during the plea colloquy that he did not "understand a critical element of the charge against him").

Finally, even assuming arguendo that Terry could establish that his plea was not voluntary and intelligent in light of Kent, any error here was harmless. "On collateral review . . . we ask whether the error 'had substantial and injurious effect or influence' on the outcome of the proceeding. Dansberry v. Pfister, 801 F.3d 863, 869 (7th Cir. 2015) (quoting Brecht, 507 U.S. at 619). As explained earlier, nothing in the record suggests that Kent had any relevance to the

28

circumstances of Terry's case.  In fact, all the evidence in the record is to the contrary and indicates that Terry downloaded the file at issue.  Knowledge of the <u>Kent</u> decision and its interpretation of § 263.16 would not have altered Terry's decision to plead guilty.  <u>See</u> <u>Renzi v. Warden, U.S. Penitentiary, Terre Haute, Ind.</u>, 792 F.2d 311, 314–15 (2d Cir. 1986) (finding—in the context of claim alleging petitioner was not told intent was an element of second-degree murder—that any error would have been harmless because, unlike in <u>Henderson</u> where intent "was a disputed issue," in the petitioner's case "intent was simply never in issue in light of [his] repeated admissions of the crime" and the petitioner, in his habeas filings, did not "suggest how knowledge that intent was an element could have altered his plea decision"); <u>cf.</u> <u>Wilens v. Superintendent of Clinton Corr. Facility</u>, No. 11-CV-1938, 2014 WL 28995, at *9 (E.D.N.Y. Dec. 31, 2013) (finding that any error resulting from the court's failure to inform petitioner of a mandatory term of supervised release was harmless because the petitioner "provide[d] no evidence that he would not have entered his guilty plea had the court informed him of the mandatory [supervised release] and it appears highly improbable that the [supervised release] played any role in his decision to accept or reject the plea"); <u>Dansberry</u>, 801 F.3d at 865–66 (finding that due process violation—based on trial court's erroneous explanation of the minimum sentence defendant faced during plea colloquy—was harmless error and, thus, did not warrant habeas relief).

## III.  CONCLUSION

For the reasons set forth above, Terry's petition for a writ of habeas corpus is DENIED. Because Terry has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue.  I certify that any appeal of this Order would not be taken in good faith, and thus in forma pauperis status is denied for the purposes of any appeal.  Coppedge v. United States, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated:  September 15, 2021
Central Islip, New York

_____/s/ (JMA)_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE